IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-02954-MEH

JULIE DERMANSKY,

    Plaintiff,

v.

UNIVERSITY OF COLORADO,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Defendant University of Colorado replies in support of its Motion to Dismiss the Amended Complaint (ECF No. 22):

**ARGUMENT**

**I.   The University is undoubtedly an "arm of the state" that may assert sovereign immunity under the Eleventh Amendment.**

Plaintiff believes that the University is not an arm of the state – and thus, state sovereign immunity is unavailable – because it receives private donations. (Pl. Resp. at 3, 7-8.) She asserts that (1) the University's entitlement to sovereign immunity depends on the "percentage of funding" received from the state versus private donors, and (2) whether the University is an arm of the state is a "question of fact" for a jury to determine. She is wrong on both counts.

First, "the University of Colorado is plainly an arm of the State" and "[t]he immunity of the University as an arm of the State of Colorado is without question." *Henderson v. Univ. of Colo.*, 139 F.3d 912, 912 (10th Cir. 1998) (unpublished). Plaintiff is off the mark with her suggestion that this issue should be reexamined "in the 21st century," (Pl. Resp. at 7), because the Tenth Circuit has already done so – and has reached a consistent result: the University of Colorado is a state entity, entitled to Eleventh Amendment immunity. *E.g., Harrison v. Univ. Of Colorado Health Scis. Ctr.*, 337 F. App'x 750, 753 (10th Cir. 2009) ("The University of Colorado Health Sciences Center is a division of the University of Colorado[.] … [Plaintiff's] claims for damages against the University of Colorado Health Sciences Center …are barred by Eleventh Amendment immunity."); *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005) ("[T]he Colorado Board of Regents is, like the state itself, entitled to Eleventh Amendment immunity."). Courts in this district have concluded likewise, *Robinson v. Bd. of Regents of Univ. of Colorado*, 390 F. Supp. 2d 1011, 1016–17 (D. Colo. 2005), as have state courts considering this question, *Hartman v. Regents of Univ. of Colo.*, 22 P.3d 524, 527–28 (Colo. App. 2000), *aff'd sub nom. Middleton v. Hartman*, 45 P.3d 721 (Colo. 2002).

To be sure, the Tenth Circuit has acknowledged the role that private funding may play in evaluating the immunity of state universities, but funding is not determinative. *See Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 576–77 (10th Cir. 1996) (despite receiving "a small amount of its funding, somewhere between 3.5 and 5%" from the state, "the University of Utah Medical Center, as a part of the University of Utah, is an

arm of the state entitled to Eleventh Amendment immunity"). Indeed, there is simply no debate that the University of Colorado is a state entity, capable of claiming Eleventh Amendment immunity. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) ("We have consistently held that state colleges and universities are arms of the state,… [including that] the University of Colorado is an arm of the state."); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) ("[T]he University of Colorado is entitled to claim Eleventh Amendment immunity.").

Nothing that Plaintiff cites warrants this Court re-visiting this well-settled issue. Citing to *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979), Plaintiff asserts that a seven-factor test – without identifying any of the factors or how they weigh in her favor – determines whether the University would be entitled to sovereign immunity. (Pl. Resp. at 7.) But *Lake Country* considered "whether the Tahoe Regional Planning Agency, an entity created by Compact between California and Nevada, is entitled to the immunity that the Eleventh Amendment provides to the compacting States themselves." *Id.* at 393. The Supreme Court concluded that because the agency was more comparable to a county or municipality, and given "[t]he intentions of Nevada and California, the terms of the Compact, and the actual operation," the agency could not claim sovereign immunity. *Id.* at 400–01. Nowhere does the Supreme Court enumerate "factors" that would weigh on whether the University may assert sovereign immunity under the Eleventh Amendment.

Plaintiff also points to *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993), ostensibly for the proposition that "financial autonomy" is one of the

3

seven factors. (Pl. Resp. at 8.) But *Rhode Island* is no more illustrative than *Lake Country*. There, the University of Rhode Island sued a manufacturer of paint that the University had used to unsuccessfully treat rust corrosion on an ocean research vessel. 2 F.3d at 1201–02. After the manufacturer removed the action to federal court, the university moved to remand, arguing it was not a "citizen" of the state for diversity purposes. *Id.* Thus, the First Circuit evaluated "the proper criteria for determining the citizenship of state universities for diversity purposes." *Id.* at 1202. To be sure, the court noted "[t]he criteria are substantially similar for evaluating whether an entity is a citizen of the State for diversity purposes, or a State for Eleventh Amendment sovereign immunity purposes," *Id.* at 1203, and after a lengthy analysis, did conclude that the University of Rhode Island was a "citizen" of Rhode Island and as such, could be sued in federal court under diversity jurisdiction. *Id.* at 1217. But that analysis, concentrated on the specifics of the University of Rhode Island and focused on diversity jurisdiction, does not compel this Court to re-analyze whether the University of Colorado may assert sovereign immunity under the Eleventh Amendment. And given the exhaustive precedent – cited above - in which the University of Colorado is found to be an "arm of the state," *Rhode Island* is even less persuasive.

At bottom, the University of Colorado is an arm of the state, and as such, is immune from suit under the Eleventh Amendment.

Second, Plaintiff is incorrect that the University's ability to assert sovereign immunity is a fact issue that "a jury should decide." (Pl. Resp. at 8.) Rather, "[w]hether a defendant is immune from suit under the Eleventh Amendment" is a question of the

4

federal courts' subject matter jurisdiction – and subject matter jurisdiction is a question of law, not fact. *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005); *Mires v. United States*, 466 F.3d 1208, 1209 (10th Cir. 2006).

### II. Congress's attempt to abrogate sovereign immunity through the CRCA is invalid.

#### a. The Intellectual Property Clause of Article I did not provide Congress with the necessary power to abrogate immunity for copyright claims.

Congress can only abrogate sovereign immunity by enacting legislation authorizing lawsuits against states if it (1) "unequivocally expresse[d] its intent to abrogate the immunity" through a "clear legislative statement"; and (2) act[ed] "pursuant to a valid exercise of [constitutional] power." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). Because there is no doubt that Congress unequivocally expressed an intent to have the Copyright Remedy Clarification Act abrogate immunity (Mot. at 3; Pl. Resp. at 4), the issue here is whether this attempt to abrogate was "a valid exercise of power."

Both parties acknowledge that the source of power at issue is the Intellectual Property Clause of Article I. (Mot. at 4; Pl. Resp. at 2, 5.) Without citing anything in support of her position, Plaintiff concludes that abrogation under Article I must have been valid because the Supreme Court hasn't determined that it wasn't. (Pl. Resp. at 6.) True, the Supreme Court has not yet weighed in on the validity of the CRCA in particular.

But the Supreme Court <u>has</u> held that the CRCA's sister statute, the Patent Remedy Clarification Act, was an invalid attempt to abrogate immunity under the

5

Intellectual Property Clause. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 647 (1999). Consequently, pursuant to *Florida Prepaid*, courts have concluded that the CRCA was a similarly invalid attempt to abrogate immunity under the Intellectual Property Clause. *See, e.g.*, *Chavez v. Arte Publico Press*, 204 F.3d 601, 607–08 (5th Cir. 2000) ("[T]he CRCA is, like the PRCA, an improper exercise of Congressional legislative power."); *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1313 (11th Cir. 2011) ("It would be incongruous to hold that Congress may abrogate the States' sovereign immunity under the Copyright and Patent Clause for actions brought under the CRCA when the Supreme Court held that the clause does not provide this authority for the Patent Remedy Act."). As one court put it, *Florida Prepaid* "necessarily dictates the conclusion" that "the CRCA cannot validly abrogate the States' sovereign immunity because it [like the PRCA] was passed pursuant to the Copyright Clause found in Article I." *Campinha-Bacote v. Regents of the Univ. of Mich.*, 2016 WL 223408, at *3 (S.D. Ohio Jan. 19, 2016) (citing *Fla. Prepaid*, 527 U.S. at 636). This Court should join these courts in concluding that the CRCA is not a valid abrogation of immunity and, as such, the University is immune from Plaintiff's claim.

### III. The Fourteenth Amendment did not provide Congress with the necessary power to abrogate immunity for copyright claims, nor does Plaintiff have a Fourteenth Amendment due process claim.

Plaintiff next argues that because Congress may abrogate state sovereign immunity when it acts pursuant to Section 5 of the Fourteenth Amendment, and that because "a copyright is a property interest protected under the Due Process Clause" of

6

the Fourteenth Amendment, the CRCA somehow abrogates the University's immunity. (Pl. Resp. at 6-7.) This is really two separate arguments. Neither advances Plaintiff's case.

### a. Even if Congress had acted under the Fourteenth Amendment in enacting the CRCA, it would be an invalid attempt to abrogate immunity.

Despite acknowledging that Article I is the congressional power at issue, Plaintiff pivots to point out that the Eleventh Circuit "'appeared to leave the door open'" for the Fourteenth Amendment to have authorized Congress to enact the CRCA. (Pl. Resp. at 6.) As explained in the University's motion, the Eleventh Circuit and some other courts have analyzed whether the Fourteenth Amendment provided this authority – and concluded that the Fourteenth Amendment did not, thus invalidating the CRCA. (Mot. at 5-6.)

Without addressing the University's analysis, Plaintiff points the court to *Nettleman v. Florida Atlantic Univ. Bd. of Trs.*, 228 F.Supp.3d 1303 (S.D. Fla. 2017) for the proposition that the Fourteenth Amendment is "the key to unlock" abrogation. But *Nettleman* supports the University's position. *Nettleman* dismissed a copyright infringement claim, finding that the Fourteenth Amendment did "not [provide] a basis for CRCA to abrogate Florida Atlantic University's sovereign immunity...[.]" *Id.* at 1313.

### b. Plaintiff doesn't have a procedural due process claim.

Taking another tack, Plaintiff points out that she has a property interest in her photograph. (Pl. Resp. at 7.) First, whether Plaintiff has a property interest has nothing to do with whether the Fourteenth Amendment authorized Congress to enact the CRCA.

7

Second, Plaintiff has not pled a state deprivation of a property interest. As the cases cited by Plaintiff show, such a claim would require her to allege violation of "an established state procedure" designed to deprive copyright holders of their interests. *Nat'l Ass'n of Boards of Pharmacy*, 633 F.3d at 1317-18; *Nettleman*, 228 F.Supp.3d at 1310. Not only does Plaintiff fail to allege any sort of "established state procedure," she contends the University is not even the state. (Am. Compl. ¶¶ 8-9.) Without alleging state action, Plaintiff cannot state a due process claim. U.S. Const. amend. XIV, § 1 ("…nor shall any State deprive any person of life, liberty, or property, without due process of law").

WHEREFORE, because the University is immune from copyright infringement claims, the Court must dismiss the Amended Complaint under F.R.C.P. 12(b)(1).

**DATED:**  February 17, 2020.

                    Respectfully submitted:

                    *s/ Erica Weston*
                    Erica Weston
                    Senior Associate University Counsel
                    Special Assistant Attorney General
                    University of Colorado
                    Office of University Counsel
                    1800 Grant Street, Suite 700
                    Denver, CO  80203
                    303-860-5691
                    Erica.Weston@cu.edu
                    *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2020, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF), which will automatically cause notification to be sent to the following counsel of record:

Richard P. Liebowitz
Liebowitz Law Firm
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowitzlawfirm.com
*Attorney for Plaintiff*

*s/ Linda Ruth Carter*
Linda Ruth Carter, Paralegal