IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02954-MEH

JULIE DERMANSKY,

    Plaintiff,

v.

UNIVERSITY OF COLORADO,

    Defendant.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court are Defendant's Motion to Dismiss Amended Complaint (ECF 22) and Opposed Motion to Stay Discovery (ECF 23). The parties dispute whether Defendant is entitled to sovereign immunity from the Plaintiff's claim for copyright infringement pursuant to 17 U.S.C. § 501, et seq. For the reasons that follow, the Court will grant the Defendant's motion to dismiss and deny as moot Defendant's motion to stay.

### STATEMENT OF FACTS

    The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in her Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

    Plaintiff is a professional photographer in the business of licensing her photographs to online and print media for a fee. Plaintiff photographed the ongoing pipeline construction work in the Atchafalaya Basin located in south central Louisiana (the "Photograph"). Plaintiff is the

author of the Photograph and has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto. The Photograph was registered with the United States Copyright Office and was given registration number VA 2-130-242.

Defendant has owned and operated a website at the URL, www.Colorado.edu (the "Website"). Defendant ran an article, dated November 12, 2018, on the Website entitled, *Thanksgiving 2.0 #2018: Continuously Inspired by Standing Rock*. The article featured the Photograph, but Defendant did not license the Photograph from Plaintiff for its article, nor secured Plaintiff's permission or consent to publish the Photograph on its Website.

An article from the Boulder Daily Camera, dated August 1, 2018, claimed that Defendant raised a "record" $440 million in private donations during the 2017 fiscal year.

## **LEGAL STANDARDS**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear her claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4. The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the Amended Complaint's factual allegations as true for its Rule 12(b)(1) analysis.

## **ANALYSIS**

Defendant's motion essentially raises two issues: (1) whether Defendant is entitled to sovereign immunity as an "arm of the state" and, if so, (2) whether Congress abrogated sovereign immunity for copyright infringement claims through its passage of the Copyright Remedy Clarification Act ("CRCA").

### I.  Is the University of Colorado an Arm of the State?

Eleventh Amendment immunity "bars a damages action against a State in federal court." *Harrison v. Univ. of Colorado Health Scis. Ctr.*, 337 F. App'x 750, 753 (10th Cir. 2009) (quoting *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989)): *see also Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 98-99 (1984). Thus, to be entitled to Eleventh Amendment immunity, a party must demonstrate it is an "arm of the state." *Harrison*, 337 F. App'x at 753.

The Tenth Circuit and Colorado courts have determined repeatedly that the University of Colorado is an arm of the state. *See id.*; *see also Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1081 (D. Colo. 2017) ("The University of Colorado is an 'arm of the state' of Colorado . . ."); *Churchill v. University of Colorado at Boulder*, 285 P.3d 986, 998 (Colo. 2012) (recognizing university's status as an arm of the state); *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005) ("the [University of] Colorado Board of Regents is, like the state itself, entitled to Eleventh Amendment immunity"); *Hartman v. Regents of Univ. of Colo.*, 22 P.3d 524, 528 (Colo. App. 2000) (holding that the University of Colorado is an arm of the state for purposes of sovereign immunity), *aff'd sub nom. Middleton v. Hartman*, 45 P.3d 721 (Colo. 2002); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) (same).

Nevertheless, Plaintiff argues that Defendant's "status as an 'arm of the state' should be re-analyzed in the 21st century," because evidence exists the Defendant has recently raised millions of dollars in private donations and, thus, the issue whether Defendant is a state entity is one of fact that cannot be resolved under Rule 12(b)(6). The Court finds that the opinions cited by Plaintiff do not convince the Court to "re-analyze" Defendant's status. First, the Supreme Court's opinion in *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency* addressed "whether the Tahoe Regional Planning Agency ["TRPA"], an entity created by a Compact between California and Nevada, [was] entitled to the immunity that the Eleventh Amendment provides to the compacting States themselves." 440 U.S. 391, 393 (1979). Unlike here, in *Lake Country*, California and Nevada both "disclaim[ed] any intent to confer immunity on TRPA" and argued that, according to

the Compact, the "TRPA [was] to be regarded as a political subdivision rather than an arm of the State." *Id.* at 401. The Court concluded, "The intentions of Nevada and California, the terms of the Compact, and the actual operation of TRPA make clear that nothing short of an absolute rule . . . would allow TRPA to claim the sovereign immunity provided by the Constitution to Nevada and California" and "the Eleventh Amendment provides no such rule." *Id.* at 402. Nothing in *Lake Country Estates* convinces the Court that Defendant's status should undergo a similar analysis.

Likewise, the First Circuit's opinion in *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993) is neither binding nor persuasive. In determining whether the plaintiff was a citizen of Rhode Island for diversity purposes, the court noted, "Although the vast majority of state universities, incorporated and unincorporated alike, have been found to be 'arms' of the State for immunity and diversity purposes, each state university must be evaluated in light of its unique characteristics." *Id.* at 1204. The court found that the "criteria are substantially similar for evaluating whether an entity is a citizen of the State for diversity purposes, or a State for Eleventh Amendment sovereign immunity purposes," and proceeded to "compar[e] the incorporated public entity to the polar extremes (the State on the one hand, and political subdivisions on the other)" by "determin[ing] whether the nominal public corporation possesses 'a sufficiently independent corporate character to dictate that it be treated as a citizen of the State of incorporation.'" *Id.* at 1203-04 (internal brackets omitted). The First Circuit ultimately concluded "that the Rhode Island statutory scheme demonstrates that the Board, unlike more 'typical' state educational entities, possesses the essential attributes of operational and financial autonomy needed to qualify as a Rhode Island 'citizen' for diversity purposes." *Id.* at 1211. In so holding, the court noted an

"extraordinary measure of autonomy enjoyed by the Rhode Island Board of Higher Education." *Id.*

At the outset, the Court notes this opinion appears to be the first time the First Circuit has addressed whether the University of Rhode Island was a state citizen for diversity purposes. *See id.* Thus, it does not support Plaintiff's position that Defendant's status should be "re-analyzed." Also, neither the Tenth Circuit nor the District of Colorado has cited the opinion. In fact, the Tenth Circuit has established its own "test" for determining "whether an entity constitutes an arm of the state":

> We look to four primary factors in determining whether an entity constitutes an "arm of the state." *Mt. Healthy* [*v. Doyle*], 429 U.S. [274] at 280, 97 S. Ct. 568 [50 L.Ed.2d 471 (1977). First, we assess the character ascribed to the entity under state law. Simply stated, we conduct a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state. *See Sturdevant*, 218 F.3d at 1164, 1166. Second, we consider the autonomy accorded the entity under state law. This determination hinges upon the degree of control the state exercises over the entity. *See id.* at 1162, 1164, 1166. Third, we study the entity's finances. Here, we look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf. *See id.* Fourth, we ask whether the entity in question is concerned primarily with local or state affairs. In answering this question, we examine the agency's function, composition, and purpose. *See id*. at 1166, 1168–69.

*Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). Notably, in describing this test, the Tenth Circuit cited its opinion in *Sturdevant*, *supra*, in which the court applied these factors to determine that the Colorado State Board for Community Colleges and Occupational Education was an arm of the state. 218 F.3d at 1171. In its application, the *Sturdevant* court cited *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (finding the University of Colorado is an arm of the state) among other cases finding universities and colleges to be arms of the state, to support its conclusion that the Board was "an 'instrumentality of the

6

state,' far more akin to state universities and their governing bodies than to [] municipalities and local school boards." *Id.*; *see also United States ex rel. Ruotsinoja v. Bd. of Governors of the Colorado State Univ. Sys.*, 43 F. Supp. 3d 1190, 1196 (D. Colo. 2014) (applying similar factors in determining Colorado State University is an arm of the state for purposes of the False Claims Act and Eleventh Amendment immunity).

Likewise, the Colorado Supreme Court found that "an Eleventh Amendment arm-of-the-state analysis must be applied to determine whether a state-created entity is a person under § 1983" and, citing *Mt. Healthy* and *Lake Country*, "adopted a three-factor analysis" for its determination:

> (1) how state law characterizes the entity; (2) whether the entity is autonomous and free from the control of the State; and (3) whether a judgment against the entity would ultimately be paid by the State.

*Graham v. State*, 956 P.2d 556, 562 (Colo. 1998) (citing *Simon v. State Compensation Ins. Auth.*, 946 P.2d 1298 (Colo. 1997)). The court applied these factors to analyze whether the University of Northern Colorado is an arm of the state and, thus, not a person under § 1983; in finding that the university is not a "person," the Court overruled its previous opinion in *Uberoi v. University of Colorado*, 713 P.2d 894 (Colo. 1986), which found that the University of Colorado (here, the Defendant) is a "person" under § 1983. 956 P.2d at 562.

In fact, the Colorado Court of Appeals applied the factors set forth in *Graham* and *Simon* to determine whether Defendant is an arm of the state: "Weighing the three applicable factors then, we conclude that the balance tips in favor of characterizing the University [of Colorado] as an arm of the state and thus not a person for purposes of sovereign immunity." *Hartman*, 22 P.3d at 527-28. The Colorado Supreme Court affirmed the decision, but the parties did not appeal whether

7

Defendant enjoyed sovereign immunity. *See Middleton v. Hartman*, 45 P.3d 721, 727 (Colo. 2002).

This Court concludes that without binding or persuasive authority, it is not convinced that Defendant's status as an arm of the state must be "re-analyzed." Accordingly, pursuant to prevailing law, the Court finds Defendant is entitled to sovereign immunity under the Eleventh Amendment in this case, unless such immunity has been abrogated.[1]

## II. Has Congress Abrogated Sovereign Immunity for Copyright Infringement Claims?

Plaintiff asserts that Congress has "validly abrogated the states' sovereign immunity from suit in copyright matters" "[b]y way of the Copyright Remedy Clarification Act[ ] of 1990, 17 U.S.C. § 511(a) [("CRCA")]." Resp. 4. Defendant counters that Congress did not have authorization and its attempt to abrogate through the CRCA was not "a valid exercise of power." Reply 5.

"[T]o determine whether Congress has abrogated the States' sovereign immunity, [courts] ask two questions: first, whether Congress has 'unequivocally expressed its intent to abrogate the immunity'; and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (citation and internal brackets omitted).

With respect to the first question, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Id.* (citation omitted). By passing the CRCA, as well as the Patent Remedy Clarification Act ("PRCA"), Congress explicitly attempted to authorize intellectual property lawsuits against states. *See* 17 U.S.C. § 511(a) and 35 U.S.C. §

---

[1] No party argues that sovereign immunity has been waived in this case. *See Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013).

271. The parties do not dispute that Congress "unequivocally expressed an intent to have the [CRCA] abrogate immunity." Reply 5; *see also* Resp. 5. Thus, the issue here is whether Congress acted pursuant to a valid exercise of power.

The parties recognize that Congress relied on the Intellectual Property Clause of Article I of the United States Constitution ("IP Clause") in enacting the CRCA. The Supreme Court has determined that Congress did not have authority under the IP Clause to abrogate immunity in the PRCA. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 636 (1999) ("*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers; hence the Patent Remedy Act cannot be sustained under either the Commerce Clause or the Patent Clause."). Plaintiff argues that, because the Supreme Court has "never found that the CRCA in particular was not enacted pursuant to valid authority," Defendant's motion "should be denied." Resp. 6. The Court disagrees.

Although neither the Tenth Circuit nor district courts in this circuit have opined on whether states' sovereign immunity has been abrogated by the PCRA or CRCA, this Court finds persuasive not only *Florida Prepaid* itself (asserting a general finding that Congress may not abrogate sovereign immunity pursuant to its Article I powers), but also the Fifth Circuit's opinions in *Rodriguez v. Texas Comm'n on the Arts*, 199 F.3d 279 (5th Cir. 2000), in which the court cited *Florida Prepaid* for the proposition that the CRCA is not justified under Article I, and *Chavez v. Arte Publico Press*, 204 F.3d 601, 607-08 (5th Cir. 2000), in which the court found "the CRCA, like the PRCA, is an improper exercise of congressional legislative power." *See also Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1313 (11th Cir. 2011) ("*NABP*") ("Congress does not have authority abrogate the States' sovereign immunity

9

through the CRCA under its Article I power."). This Court concludes that Plaintiff does not persuade the Court that Congress validly exercised its power under Article I to abrogate sovereign immunity in enacting the CRCA.

Plaintiff argues that, even if Congress was not authorized under Article I, it had authority under the Fourteenth Amendment's due process clause to enact the CRCA. While it may be true that the Fourteenth Amendment generally "provides a legitimate basis for abrogation" (Resp. 6), the Court finds Plaintiff fails to demonstrate Congress' authority to abrogate Defendant's sovereign immunity in the CRCA pursuant to the Fourteenth Amendment.

"[Section] 5 grants Congress the power to "enforce . . . the provisions" of the [Fourteenth] Amendment by creating private remedies against the States for *actual* violations of those provisions." *United States v. Georgia*, 546 U.S. 151, 158 (2006) (emphasis in original). "This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States." *Id.* "Congress' abrogation of the States' sovereign immunity in the CRCA is valid if the copyright infringement also violated [plaintiff's] constitutional rights." *NABP*, 633 F.3d at 1315.

Plaintiff cites to *Nettleman v. Fla. Atl. Univ. Bd. of Trustees*, 228 F. Supp. 3d 1303, 1309 (S.D. Fla. 2017) for the proposition that "the language of *NABP* appeared to leave the door open for an embrace of Section 5 of the Fourteenth Amendment as a source of abrogation, given the right factual allegations." *Id.* In fact, in both *Nettleman* and *NABP*, the courts addressed whether the CRCA was a valid exercise of Congress' Fourteenth Amendment power by analyzing the plaintiffs' due process claims, and in both cases, the courts concluded it was not. *See NABP*, 633 F.3d at 1319 ("we hold that the amended complaint failed to allege a due process violation and

consequently did not allege a damages claim that may be brought under the CRCA"); *see also Nettleman*, 228 F. Supp. 3d at 1313 (". . . Nettleman's pleading does not allege a due process violation that could be vindicated by the Fourteenth Amendment's Enforcement Clause. I must conclude, in turn, that Nettleman has not established a basis for CRCA to abrogate FAU's sovereign immunity in this instance.").

Plaintiff argues that, because "a copyright is a property interest protected under the Due Process Clause," her Fourteenth Amendment rights are implicated in this case. Resp. 7. However, unlike in *Nettleman* and *NABP*, the Amended Complaint in this case contains no allegations of any due process violation. Even if Plaintiff had articulated a "claim" for a due process violation, nothing in her pleading "raise[s] a single established state procedure evincing a design to strip [her] of a property interest" (*Nettleman*, 228 F. Supp. 3d at 1310-11) nor "pleads an absence of post-deprivation remedies" (*id.* at 1312). Plaintiff's mere argument that "Defendant has deprived her of the opportunity to receive proper compensation for the fruit of her labor" is insufficient. *See* Resp. 7. For this reason, the Plaintiff has failed to demonstrate a basis for the CRCA to abrogate Defendant's sovereign immunity pursuant to the Fourteenth Amendment.

## CONCLUSION

The Court concludes that it lacks jurisdiction to hear Plaintiff's copyright infringement claim, as Defendant enjoys sovereign immunity under the Eleventh Amendment. Therefore, the Defendant's Motion to Dismiss Amended Complaint [filed January 21, 2020; ECF 22] is **granted** and Defendant's Opposed Motion to Stay Discovery [filed January 21, 2020; ECF 23] is **denied as moot**. Plaintiff's sole claim for copyright infringement against Defendant is dismissed without prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated this the 23rd day of March, 2020, in Denver, Colorado.

                BY THE COURT:

*Michael E. Hegarty*

                Michael E. Hegarty
                United States Magistrate Judge